22 So.2d 95

## EVANS v. STATE.

### 8 Div. 405.

Court of Appeals of Alabama.

June 27, 1944.

Rehearing Denied Aug. 22, 1944.

Affirmed on Mandate May 8, 1945.

K. J. Griffith, of Cullman, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

From a judgment of conviction for the offense of grand larceny, this appeal was taken.

The property in question was a cow belonging to one Frank Fitzgerald, and the evidence is without dispute that said cow was stolen on or about the night of September 4, 1940. We gather from the record, that in order to show defendant's opportunity to commit the crime the State was allowed, over the objection and exception of defendant, to offer evidence of the fact that witness Ed Knight saw the defendant at Patterson's store the evening the cow was stolen that night, at which time he was alone and driving a truck and Knight sold defendant some gasoline, after which defendant drove on down the highway in the direction of Cullman, in which town he lived. Fitzgerald lived off of the Bee Line highway and about nine miles from Patterson's store. The above evidence, which it must be admitted was of slight, if any, probative value or force. It was all the evidence offered by the State, except the fact that some days thereafter the defendant was in possession of the cow in question and sold same to a man by the name of Joe Tucker. The injured party, Fitzgerald, recovered and received back his cow some few weeks thereafter, and the defendant after having learned that the cow was stolen, reimbursed Tucker by paying him back his purchase price.

Without dispute or conflict the evidence disclosed that the accused was a man of good character and was a trusted employee of a merchant for many years, in his home town of Cullman. The merchant, a Mr. Joe Sapp, testified in behalf of the defendant and among other things stated:

"My name is Joe Sapp. I live at Cullman. I am a merchant. I know Jack Evans, the defendant and I have known him about ten years; he is an employee of mine and has been such between six and seven years, except for the time that he was laid off one summer until along in October. His duties are general salesman, clothing department, all over the store. He has been in charge a great deal of the time when I am out of town. He has a key to the store now. He opens up half the time now. Yes, I think I know Mr. Evans' general reputation in the community in which he lives; it has always been good so far as I know. I never heard any derogatory things about his character or morals."

The defendant testified in his own behalf. The record shows that he is a white man 29 years of age and married. As stated, the evidence without dispute or conflict discloses he is a man of good character. He testified, in explanation of his possession of the cow in question, that he, on the same day that he sold the cow to Tucker, bought the cow from a man by the name of Bates and paid him (Bates) $32.50 for the cow, which he stated was a reasonable price. As to this he testified:

"I bought that cow. I can't remember the exact date, I bought her in Cullman

about half a block north of D. T. Kinney's mule barn, on the same street the hospital is on. I bought her from G. F. Bates. Demoree Thompson was with me. He is in Mobile now, working in the shipyard. I imagine I talked to him about thirty minutes before I closed the deal. I asked did he want to sell one, he had four cows on an International three-quarters ton truck —and he said he did. I guess I talked to him about thirty minutes. I have not seen him since then but I would love to, though. I've tried to locate him, but haven't been able to."

He was then asked, "Q. How did you try to locate him", and he stated, "Well, I have told everybody I know around Cullman that is buying cattle to keep an eye out for him; Watley Brothers and Sparks has a barn, and I described him to them and told them to let me know if he come in there." He also testified: "Demoree Thompson was with me. Mr. Bates unloaded the cow from his truck and I led her off into my truck. The unloading took place right up the street from D. T. Kinney's mule barn, about halfway the block going north to the hospital from his barn. I sold the cow to Mr. Tucker that same day. A Eubanks boy was with me when I carried the cow over to Mr. Tucker."

As stated hereinabove there was no dispute or conflict in the evidence which tended to show that the cow in question was stolen. The alleged injured party testified as to the tracks of the cow leading from the barn from which she was taken, and in this connection also stated, "I seen the tracks where she went out the fence. * * * I saw cow tracks and two men's tracks going down that lane." No measurement was made of the "two men's" tracks nor was there anything done to identify them.

There was no conflict in any of the material facts of this case, and it affirmatively appears that the single fact that appellant had possession of the animal was relied upon for a conviction. Possession, as aforesaid, was admitted, but it affirmatively appears that such possession was fully explained and the accused, a man of undisputed good character, in a straightforward manner, explained his possession of the cow, which explanation was without dispute or conflict, and no attempt was made by the State to prove its falsity or to rebut it.

The testimony of defendant should have been considered by the trial court. No court or jury has the right to capriciously refuse to do so. That it was not considered in this case is manifest from the judgment rendered. Underhill's Criminal Evidence, 4th Ed., Sec. 517, pp. 1046, 1047 and 1048, reads:

"Though many courts say that proof of the recent exclusive possession of stolen property places on the defendant the burden of explaining such possession as not larcenous, such statement is not accurate, as it confuses the burden of proceeding with the burden of proof. The most natural and usual method of raising such doubt is by a reasonable and probable explanation of the possession. It is reversible error not to permit him so to explain, or to reject any relevant evidence tending to produce that result. His explanation may be taken as true if the state, relying for a conviction and proof of the corpus delicti upon recent possession alone, does not prove its falsity or attempt to do so. It is not requisite that the accused should prove that his possession was honest. It is sufficient to acquit him if he gives a natural, reasonable and probable explanation of how he acquired possession, which the prosecution does not show to be false."

Upon the trial of this case in the court below numerous exceptions were reserved to the court's rulings. Some of these exceptions appear to be well taken, but as we see it these questions need not be adverted to for the reason it clearly appears under the undisputed evidence that the State failed to meet the burden of proof necessary to a conviction. The evidence being wholly without conflict and as stated, no conviction of the defendant could be based thereon, the court should have given the affirmative charge requested in writing by the defendant.

█ There was also error in the action of the court wherein the defendant was sentenced to imprisonment in the penitentiary for a period of one year. Under the law no such sentence is authorized. Code of Alabama 1940, Title 15, § 325; Wade v. State, 29 Ala.App. 115, 192 So. 425; and numerous cases cited.

For the error in refusing said charge, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.

22 So.2d 102

After Remandment.

As stated by this court in the original opinion; under the evidence in this case but one inquiry of fact was involved and that upon this question there was no semblance of dispute or conflict; we therefore held, as will be noted, the court should have directed the jury to return its verdict in favor of defendant, as requested in writing.

■ Upon certiorari to the Supreme Court, by the State, the writ was granted, and under the Statute, Title 13, Sec. 95, the decision of the Supreme Court prevails. Accordingly, we, perforce, must now hold that no error prevailed in the action of the trial court in this connection. This results in the affirmance of the judgment of conviction from which this appeal was taken. But as stated in the original opinion of this court: "There was also error in the action of the court wherein the defendant was sentenced to imprisonment in the penitentiary for a period of one year. Under the law no such sentence is authorized. Code of Alabama 1940, Title 15, § 325; Wade v. State, 29 Ala.App. 115, 192 So. 425, and numerous cases cited." It therefore becomes necessary to remand this cause for proper sentence, under authorities cited.

■ There appears upon the record proper in this case, a motion for a new trial. Also that an exception was reserved to the adverse ruling of the court in denying and overruling said motion. No mention is made in any manner of the motion for a new trial in the bill of exception, therefore the insistence of the State in this connection is correct wherein it is stated: "It is mandatory that the bill of exceptions must contain a sufficient recital to show making of motion for new trial, the ruling thereon and an exception thereto; otherwise alleged error in overruling such motion will not be noticed. Wilson v. State, 25 Ala.App. 298 [145 So. 591]; Levene v. State, 26 Ala.App. 428 [161 So. 268]."

The writer is clearly of the opinion that the conviction of the defendant, under the undisputed testimony in this case, is of very doubtful propriety, and while this court can go no further, the writer is also of the opinion, the question of the probation of the defendant should have careful consideration by the trial court, or in lieu thereof, by the Pardon and Parole Board of the State.

Affirmed as to judgment of conviction. Remanded for proper sentence.